and Jim Ellsmith 23-13563. I'll give y'all a chance to get set up and when y'all are ready we'll get started. If you're ready, Mr. Pike you may proceed. Hold on one second. You may proceed. May it please the court. I'm Jim Pike. It's my pleasure to represent Cottonwood Police Chief Tony Money and Colonel Jim Smith, a Cottonwood officer in this appeal. This court should reverse the district court's denial of qualified immunity to Chief Money and Colonel Smith on Ms. Maldonado's false arrest, retaliatory arrest, and malicious prosecution claims because the complaint and the exhibits that the complaint incorporate by reference demonstrate that the officers had actual and arguable probable cause to arrest Ms. Maldonado after she remained on the premises of the Cottonwood Town Hall after receiving multiple orders to leave. Can we mail down specifically what your contention is, the point at which she remained on the premises? I watched the video. You see her leaving. She's actually getting in the car about to leave and then there's the interaction with the police. At what point are you saying that she remained after being told to leave? So there are four points. First, the complaint establishes in paragraph 110 that Ms. Maldonado was ordered to leave the premises while she was still inside the town hall. And what do you consider the premises to be? Because she was in the parking lot. Is the parking lot part of the premises from your point of view? Yes, sir. For two reasons. Number one, the statute, 13A-7-1, subparagraph 5, defines the premises as any building and any real property. That's the criminal trespass statute definition. 13A-7-1, subparagraph 5. And also Black's Law Dictionary defines premises, and I can read the definition to you, defines premises as a house or building along with its grounds. So whether we go by Black's Law Dictionary or the Alabama Code itself, she was still on the premises refusing to leave. In fact, she never left. It's undisputed that she was told to leave the premises while she was inside. That exterior, that occurred, that order to leave the premises, the complaint pleads, occurs before the exterior video even begins, before she walks to the car and walks back to the building, before she stands at the car pointing at the officers yelling, before she gets in the car and gets out. Paragraph 110 of the complaint establishes, without doubt, she'd been ordered to leave the premises before that video even started. Well, and I guess that's a question. I've seen the video as well, and so the initial encounter when she's trying to pay her bill, and then she leaves, and then she appears to come back in, but the complaint doesn't make clear at which entry she's told she has to leave. Well, the complaint makes clear it occurred inside the building. We know it's inside the building. Right. But she seems to have two points in time where she's inside the building. I don't know why we should assume it's the first time when she was actually paying the bill. Because she clarified that in her brief to the district court. On page 48, paragraph 3, she conceded to the district court that she, when asked to leave, so that we have the order to leave inside the building, she complied, she turned around briefly when exiting town hall to apologize. So from the video, I'm not sure that that's a concession, in as much as when I've looked at the video, she's inside, she leaves, and it, I think, reaches at least the sidewalk, turns around and goes back in. That doesn't seem to be a concession. She's conceding she's asked to leave when she's inside, but it doesn't say first or second time. Well, but she makes a beeline straight out the door. She doesn't pause on the way out the door to turn around and apologize. The video shows that. The video contradicts her explanation that it was simply a matter of turning around and apologizing, but she's admitting that an order to leave was given before. Well, we see what happens on the video. She goes out for five seconds and comes back in. But even if you don't credit her concession that that's what happened, that she was ordered to leave before she went out for five seconds and came back in, we know without any doubt that the order to leave was before the second video even started. We know at the very least that the order to leave came when she had come back in the second time, because we know it happened when she was inside.  Before the second video even starts, paragraph 110 of the complaint concedes she was told to leave the premises. And then everything on the second video happens after the complaint alleges she was told to leave the premises, walking back toward the building. She's not leaving the premises when she walks back toward the building. She's not leaving the premises when she gets back out of the car. So you're saying that in the officer's mind, well, first, I'm not even sure if we can make this leap based on the record. The plan to arrest happened inside, but was executed outside? I mean, I guess I too, we all watch the video. And from the video, it looks like whatever the back and forth is, there's no physical contact with the police officer until she's at her car, getting into the passenger seat. The officer grabs the door. And that is what the video appears to show, that she's at that point when the interaction with the police officer happens, she's not going back. She's at her car. Judge Bitter, I would ask you to watch it again, because what that shows when that interaction begins is she had already gotten in the car. He didn't arrest her. She got in the car. Then she got back out again. Because at that point, the police were outside, right, interacting with her. So essentially, they stopped her from leaving because they came out and whatever she was saying, they decided to engage with her. And then she got out of the car. Is that correct? I don't understand how that's from telling somebody. She admits that what they were telling her is to leave. And she was leaving. Not when she walked back toward the building, she wasn't leaving. If anything, there is a debate about whether or not the allegations, which we have to accept that that's true, will ultimately be proven. So I guess if all you're relying on is the video and there's a debate about the video, how is it that your clients are entitled to qualified immunity at this juncture of the litigation? I'm relying on paragraph 110 of the complaint that alleges she was told to leave the premises before that second video ever even started. And the second video shows her walking back toward Town Hall after the complaint alleges she'd already been ordered to leave the premises. And I'm relying on the fact that she got back out of the car after the complaint alleges she'd already been told to leave the premises. And it's the plaintiff's burden to find controlling precedent from the Alabama Supreme Court, a published opinion by this court, or a U.S. Supreme Court opinion that holds in these circumstances. These officers could not believe she was trespassing when, after telling her to leave the premises before she ever left the building, she goes to the car, walks back toward the building, she gets in the car, gets back out of the car. This court in Manners v. Cannella held that a failure to comply with a police officer's order for 14.4 seconds justified arrest. She defied the officer's orders for a much greater period of time than this court upheld in Manners. In Anderson v. Homewood, the Northern District of Alabama said a person who never reversed course but was only moving too slowly justified arrest for trespass. And all of those are things that would come out during discovery, summary judgment, or trial. But I guess I'm just trying to understand at this phase of the case where at least there are arguable different interpretations of the video. Why is it improper to deny qualified immunity at this juncture? I don't see what the different interpretation is. The video clearly shows that. Why don't we just acknowledge that? I mean, four people, four different discussions. I mean, there's obviously a debate. You're here as an appellant. The district court didn't agree with you. So to say that there's no reasonable debate would not be fair. What I'm trying to understand is what is it that justifies the granting at this juncture, not down the road, at this juncture. The paragraph 110 admits she had already been ordered to leave the premises before the second video even begins. And the second video shows her going back toward the building after she admittedly had been told to leave the premises. The second video shows her getting out of the car after she admits in her complaint that she was told to leave the premises. That is irrefutable. Can I ask you a question about your use and reliance on the criminal complaint? And I think the district court utilized that as well. We do have case law that suggests that when we have official reports, police reports that conflict with the allegations in a civil complaint related to the same subject matter, we have to credit the well-pleaded allegations of the civil complaint over the official report. I'm looking at Saunders v. Duke. So how is that at this stage that we're entitled to the extent it conflicts with the complaint? How are we entitled to give credit to the criminal complaint? Well, I think if you read the cases closely, you do. First off, the part about the order to leave the premises comes from the complaint itself, paragraph 110. But on your point, if you look at Crenshaw, if you read it closely, remember that the holding is confined to the facts of the case, not dicta. In Crenshaw, on page 1291, this court wrote, this is a published opinion. In addition to supplementing Crenshaw's general allegations, the police report also contradicts one of Crenshaw's specific allegations. And this court said this allegation is significant because if true, it would have given some credibility to Crenshaw's attempt to surrender and potentially rendered the use of the canine unnecessary. So the police report, incorporated by reference, contradicted a specific allegation of the complaint that would have prevented the court from ruling for the defendants. And this court said, where it cited Simmons v. Peavey Welsh, where there's a conflict between the allegations and a pleading and the exhibits, thereto it's well settled that the exhibits control. Peavey, a 1940 former Fifth Circuit opinion, prior panel precedent, held that where there's a conflict between the allegations and a pleading and the exhibits, thereto the exhibits control. Even though in Simmons, the complaint, quote, pled the evidentiary, pled, quote, evidentiary facts in detail. That's prior panel where you had a complaint that pled facts in detail. And this court held the exhibits control. No exception. That's, you have to follow the 1940 opinion. So there's two answers there. We'll determine whether we have to. Well, I mean, look at the facts. I understand that that's your, I think a criminal complaint is a, is a different animal entirely, it's going to be slanted to one side. Certainly if you attach the contract to and that's an exhibit and it conflicts with the allegations of a complaint I would agree with you but I don't think it is necessarily the case when we're dealing with like a police report where it's going to necessarily be slanted in one direction and it I don't think that you can just say, oh, that's in conflict with the civil complaint here it necessarily controls but I certainly will be looking at the case law. And if it tells me I need to follow that then that's what I will do, I would ask you to look at Crenshaw which also was a criminal complaint and also paragraph 110, not just references but says it describes the events. So they, they literally incorporate the criminal complaint in their complaint that's one 10 of their complaint. I see that my time is expired. So if there's no further questions you have three minutes for rebuttal. Yes, thank you, Your Honor. Mr Griffin. Thank you, Your Honor. May it please the court. My name is Rick Griffin. I represent the Appalachian for Maldonado has your client conceded the fact that the where the video starts when she's trying to pay her debt that's when she was ordered to leave the premises. I think at some point inside the building. She was told to leave that first initial time because she leaves and appears to come back in. At what point was she told. I've been in, in there, that in that building. The videos a little bit, you know, it shows the metal detector right there. I don't think she actually left the building I think she made it to the door, we tried this case in Houston County, and her testimony there was what happened was her bag of change because they wouldn't accept her payment. She had the change separated into, you know, so many quarters so many dimes and so forth. It was heavy. She was mad. She was stormed out her bag of change, hit the door, and when it hit that glass door. It made a smack. So, she turned around and apologized, she said I'm sorry. Now I thought in a polite society that we encourage people to apologize, but the officers in their brief for calling that a refusal to leave. She was ordered before the coins hit, she was ordered to leave the premises. I don't know, I don't know that. What, what, what I do know is that she was told, we're not going to take your payment we're not going to help you. She had told him I'm a disabled veteran. Can y'all please help me. They said no we're not going to help you. It's our policy not to help. We're too busy. There was at one point in time if you watch the interior of the video, you see there's only one other customer in there. At one point in time, there's three city employees behind the counter officer money and, and the, and the Colonel, Colonel Smith, all five of them are behind the counter, and they will not help her roll $70 worth of change or help her counted out so that she could get her water. When the actual arrest took place. How significant is it when the actual order came I mean assume that they told her as soon as they said you can't give the change you need to leave. She comes back to apologize you need to leave. She walks out and does the back and forth you need to leave but then she's at her car when the actual arrest happens again. Does it matter when the order was given. Well, Your Honor, if, if, if you look at the exterior video. The only thing that you see is that the video is pointed at my clients automobile. It shows my client, go to her automobile. What it doesn't show. Unfortunately, and I wish that we had this. First of all, I wish we had audio for the second of all I wish we had cams from the officers, but they said that they weren't wearing them. Third of all, there was a camera that was pointed right at the door on just on the exterior of, I'm sorry, maybe you're getting there. Does it matter, given that she was arrested at her car, when, if any order was given for her to leave. Well, I think, I think what happened was, I mean the officers. After she apologized. And to my way of thinking, I think that everything that they did after that they were just throwing gas on the, on the fire they were they were exacerbating it. So let's say if they told her, at least once once on the exterior, it, you need to leave. And she's doing this back and forth and even though she's at her car. What is your argument against why they didn't have authority at that time to arrest her. Because I, because I think that this is a First Amendment case, but mainly what they got upset about what they arrested her for was telling the officers, F you. So you're saying that it wasn't that a trespass wasn't the basis for the arrest. I don't believe so I believe it was the officers got upset. What did you allege. This is why this is why I let him I complain is that the officers were upset, because she said, F you to the officers, where are your morals and values, and they're outside, and that's why I wish that we had that video camera that was pointing. Just right outside the door where the officers were standing, hollering at her that you don't have the right. You don't the First Amendment is not what you people think it is you don't have the right to say that to us. Well there's a clear line of cases, Alabama and 11th Circuit cases that say that you can tell that to an officer officers in their training. Okay, so let's say, and I understand your position but let's say this is purely about them telling her that she was violate violating the trespass law. And then she's by her car. What is your argument against why it was still improper for them to arrest her at that time, what they arrested her for was disorderly conduct and resisting arrest. The trespass was, you know, thought up once the case got got to the district court briefing, but you know that we have case law, including Garcia, the any crime rule that says you are insulated from false arrest, as long as there was probable cause to arrest for any crime, even if it was not the crime the officer thought or said that's correct. So, they're traveling under they're saying this is a trespass violation so we're just trying to get you to engage with the trespass. Yes. I understand. If you look at that exterior video, what you're talking about is 41 seconds, 41 seconds, and they gave some case law manners, easily distinguishable the other case Anderson easily distinguishable. I mean one of them says the guy was backing up and filming. Well the officer just told him to leave and he didn't do that the officer wasn't engaging in any other way in this case the officers were engaging. Hey, First Amendment doesn't say that you can't talk to us that way blah blah blah blah blah but I think the question before you is that it, if she did they have arguable probable cause to arrest her for trespass. I'm assuming you say no but how are you saying no what's your reasoning behind that. Well, I think, mostly my reasoning is that they were the ones who were throwing the, the gas on the fire, but they ordered her to leave she has conceded that, and she didn't leave. So how do they not have arguable probable cause to arrest her for trespass. Well, I mean I don't, I don't know exactly. I mean there's, there's probably not, you know, a case right on point that says that they do or don't have arguable probable cause in this case I mean I didn't find one. Okay, but you know for qualified immunity purposes, the law has to be clearly established and you're telling me you don't have a case. Well, I mean there's other ways to to establish clearly established besides a case. You can have material or similar case law you can have broader clearly established principles. So tell me which method you're traveling under. Well, here's one conduct is so that so obviously violates the Constitution that prior case law is unnecessary that's from the Keating case, and you know those are that's a that's a harder standard to make to reach. So, and also, you know, you're citing in your briefing to a large number of non binding cases are unpublished cases. And only binding precedent can clearly establish a right for qualified immunity purposes and again that's that's why we're here we're trying to determine if the officers are entitled to qualified immunity. So I'm just trying to get at how do you overcome qualified immunity in this case. Yes, ma'am. Well, I think the video does it. I think it's by just watching the video and seeing the fact that she's leaving. She is leaving had the officers not continue to engage her. She would have left when she turned and apologize for the change hitting the door. If they hadn't chased her outside and continue to yell at her you can't say that you can't talk to us that way. She would have just been gone. There's, I mean, it would have been less than the 40 seconds because the officers engaging her is was what can is what caused her to. I mean, I guess you could have turned around and said, Well, you know, I'm going to leave they're yelling at me but I'm going to leave. But when somebody is telling that you don't have the First Amendment right. I mean, that's pretty chilling. So that was my challenge is, if we're thinking of the whole context, then perhaps it does make it a little more difficult for you but if we're just focusing on whatever the officers told her to do that by the time she was at her car. There was no threat, and she was leaving, then does that, you know, undermine or vitiate or whatever the verb is the actual arrest and encounter at that time, she was leaving. I mean that's clear she will the answer is yes. So, so do you need all of that narrative before the actual encounter at the car, or can we for purposes of seeing whether the arrest was proper. Just focus on what happened at the car. Can you, can you repeat I'm sorry can you. So for purposes of determining whether the arrest at the time was proper. Do we need the full narrative of what happened inside town hall, the back and forth before she gets to her car, or can we just focus on at the time that she was at her car. She was leaving and therefore whatever the probable cause that the police officers assert did not exist. I don't think that I don't think it did exist. I mean, all they had to do was let her get in the car and leave. That's, that's, that's it. Do you want to talk about your excessive force claim. Yes. Do I just want to. You're running out of time I wonder if you wanted to talk about that the excessive force. Yes, sir. I think that the owner I think that the law is clearly established and as far as the excessive force claim. One of the cases that I think supports us. Is Johnson versus Andalusia. That was a case where there was no probable cause woman. Young, young girl was turned around at a roadblock cop comes back sees her throws her against the car forcibly handcuffed or throw her to the ground. Very much like our case, and what if, even assuming there's probable cause do you still think that your excessive force claim survives. Yes, your honor I do. I do, because she was, she was a petite person. She was not resisting. She was trying to comply with the orders. I know the video is unclear. And most of what takes place takes place on the opposite side of the car and takes place behind the car which which the car obscures the cameras. But she, as in, as in Johnson's a petite person she was not doing anything to resist and she are trespass and disorderly conduct are those misdemeanors or felonies do you know misdemeanors as resisting arrest. Yes, as a misdemeanor as well and as, as your honors know, I mean, if, if it's, you're talking about a, you know, non violent relatively minor crime. The level of force that is used doesn't need to rise to the level of violently throw in a small non resisting person grabbing her by the neck, throwing her to the concrete seriously injuring her. She's still lives in Cottonwood she's scared to death of seeing every time she sees a police car. She's got some, some real medical issues that are still going to have to be attended to. So, the force was not the minimus and there's lines of cases that say, you know that that doing that kind of thing and that kind of case is excessive and I think that, like I said the Johnson versus Andalusia cases, really illustrates that fact. It's very similar, very similar person and stature very similar that she had done nothing wrong, thrown to the ground. You know, these are just officers who, in my opinion, and I think got their feelings hurt, got upset because she said some things to them that they didn't like, and they maliciously decided that she was going to pay the price. And so, you know, and trying to exercise her First Amendment rights they told her she didn't have that right. And I guess they tried to prove it. Thank you, Your Honors. Thank you, Mr. Pike you have three minutes for rebuttal. First briefly on the arrest. The officers didn't arrest Miss Maldonado when she got in her car. They arrested her when she got back out of her car, that's not leaving. She could have pulled a gun out of the car as fierce as she was people carry guns in Alabama, it became a safety concern. She was getting out when they arrest her, they let her get in. She didn't leave. They let her walk after she walked toward the building and walk back and let her go back to her car. She didn't leave the, there's no dispute ship in order to leave in manners. This court says it does not matter. It does not alter our evaluation simply because the period of time was short. So long as the plaintiff could reasonably and safety, safely have complied with the officer's direction did not do so. That's controlling precedent at some point, going to excessive force. The only case he pointed to Johnson versus City of Andalusia district court case camera versus screen by the US Supreme Court says can't clearly establish the law it's not binding precedent anywhere. That was my case I know it very well it's. We were on appeal to this court when that settled we disagreed with that. It's not controlling precedent going to disagree with the proposition, though, that there has to be some proportionality. And I think this is a non violent misdemeanor that you're assuming there's probable cause that's what we're talking about. And based on the video. It didn't doesn't seem like she is at the point at which the officers immediately encounter her, I can see on the video they take her behind and we don't see what happens when we do see the vehicle rocking back and forth so it looks like they're using a lot of force there. And then of course there are the allegations and the, and the complaint. So, you know, how is it not obvious that they can do something like that. Sure, I'm glad you brought that up. First, let's talk about controlling precedent Draper versus Reynolds, that the truck driver was merely verbally combative and non compliant. No active resistance. He was tased on the side of the road this court held that did not violate the Fourth Amendment. Alexandria versus Ortiz that he was grabbed in a headlock around the neck, taken to the ground suffered a fractured orbital no rest command. This court assumed he was not resisting qualified immunity for the officers corn versus bear. This court assumed that she was compliant. He did not start with the rest command. This was a female, a woman arrest a taken to the ground with an arm bar broken arm they required surgery. This court granted qualified immunity JW versus dormant 13 year old school student again this was one of my cases argued in this room, taken to the ground. And in another arm bar situation to broken arms as court, or one broken arm to surgery says court granted qualified immunity. How can it be clearly established in the total absence of case law, when we have cases on point where this court has granted qualified immediate officers in similar situations in what about Lee versus for our over, we concluded that slamming and non resisting criminal suspects head onto the hood of a car was excessive. She was handcuffed in this case we had a plaintiff, who was verbally combative and it disobeyed repeated orders to leave. That makes this case, more like Draper, where he disobeyed orders that makes this case, more like Alexandria versus Ortiz where they disobeyed orders to disperse they were celebrating in the streets, makes this case, more like porn. She was not non compliant in fact she pled in the complaint that the force was used to induce her submission to arrest that implies that she wasn't submitted paragraph 110 of the excessive force count pleads that the officers criminal complaints describe what happened she expressly invokes that in her excessive force count, and their complaints say she pulled away requiring them to take her to the ground. She pleads, the complaint says she was rushed and tackle the video proves she wasn't just rushed and tackled the video proves she remained on her feet for some 24 seconds struggling with them. The video, while it's not crystal clear contradicts the conclusion allegation that she was just tapped simply tackle to the ground and nothing else. We know she struggled on her feet for some period of time, and he brought up the criminal trial transcript the district court didn't consider it. I don't know if this court is going to consider the criminal trial transcript or not. He was allowed to quote it. So I would quote the part. If it's okay that this is in the record. He came running towards me and grabbed me, he grabbed you. Yes. So at that point you didn't just stop and let him arrest you know I was never told I was under arrest. Did he ever tell you to stop resisting. They told me they were going to tase me, and then I stopped. That's her sworn testimony in this record. That's the pages 173 and 174 of document 44.1. Thank you. Thank you, Your Honor. Thank you. We have your case under advisement and court is in recess until tomorrow morning.